JUN 26 2023 PM3:52
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AP Pascarella | : | |
| Plaintiff, | : | |
| v. | : | Case No. _____ |
| | | |
| Ten-Ex Commercial Real Estate, et al. | : | |
| | | |
| Defendants. | : | June __, 2023 |

**COMPLAINT AND REQUEST FOR INJUNCTION**

I.    **The Parties to This Complaint**
      **A. The Plaintiffs**

**AVERARDO PASCARELLA**
(PRO SE)
c/o The Pascarella Law Firm PC
PO Box 2
Greenwich, CT 06830
Tel. +1 (917) 771-2511 cell
aldo@pascarellalaw.com

**B. The Defendants**

**TEN-EX, INC.**
**TEN-EX COMMERCIAL REAL ESTATE**
**SAMANTHA CORBAT, its Supervising Broker**
**STEVEN JACOBS, its President, CEO/CFO**
**VIBHAV KAPILA, its Supervising Broker**
**MATTHEW VANDERMYDE, its Director**
**MICHAEL VASOGHI, its Supervising Broker**
17600 Laguna Canyon Road
Irvine, CA 92618-5432
Tel. +1 (888) 770-7332
legal@ten-x.com

READYCAP COMMERCIAL LLC, an SBC[1] loan originator
READYCAP HOLDINGS LLC, its Parent (%100)
SUTHERLAND PARTNERS LP, General Manager, a REIT under IRC '86
SUTHERLAND ASSET MANAGEMENT CORP., its sole General Partner
a Maryland Corp.
WATERFALL ASSET MANAGEMENT LLC, its Manager (1940 Act Reg.)
READYCAP LENDING LLC, a related entity
READYCAPITAL MORTGAGE DEPOSITOR, LLC, a related entity
READYCAP MORTGAGE TRUST 2016-3, the fund meant to hold the Loan
JULIAN MURILLO, Asset Manager of ReadyCap Commercial LLC,
     who testified to the March 30, 2022 Affidavit of Debt
Timothy P. Moylan
203-358-0800 x 3330 <TMoylan@dmoc.com>

SVN | STORA REALTY, its Property Manager & Broker
STEVEN STOEHRER, its Managing Director (a NY licensed realtor-
#S1St1012361)
SVN COMMERCIAL, its Connecticut realtor license holder
ELEVATE ASSET MANAGEMENT
SVN ELEVATE
ALICE HARVEY, Portfolio Manager- National Accounts at SVN Elevate
SVN INTERSTATE BROKERS
JOHN JOHNSON, Managing Director at SVN Interstate Broker
REID BENNETT, National Council Chair of Multifamily Properties for SVN
CODY DORAN, SR VP AT SVN CHICAGO
SVN Stora Realty Corp
31 West 34th Street, 7th Floor,
New York, NY 10001
Tel. +1 (929) 343-5051
sstoehrer@svn.com

KEYBANK
Mr. Stephens, Derek A., an employee of KeyBank
GRANT WINEMILLER, Asset Manager at KeyBank

---

[1] "SBC" is a *small balance commercial loan*, such as the one Defendants are attempting to auction.

203-358-0800 x 3330
Timothy P. Moylan <TMoylan@dmoc.com>

## II. BASIS FOR JURISDICTION

### A.  28 USC SEC 1331 : QUESTIONS OF LAW

Defendants have published false and misleading statements in violation of the Loan Documents and the Court Order and through other acts, omissions and breaches have creating express rights and remedies due to violations of 15 U.S. Code § 1692d and15 U.S. Code § 1692d and others as may be applicable and plead in future amended complaints.

### 28 USC SEC 1332: Defendants are not from Connecticut, Plaintiffs Are

Averardo P. Pascarella is an individual resident of the State of Connecticut

Defendants Ten-Ex, Inc. et al are neither Connecticut corporations nor residents, although some of its Employees named as additional defendants may be.

Defendants ReadyCap, Inc. et al are neither Connecticut corporations nor residents, although some of its Employees named as additional defendants may be

Defendants SVN et al are neither Connecticut corporations nor residents, although some of its Employees named as additional defendants may be

Defendants KeyBank  et al are neither Connecticut corporations nor residents, although some of its Employees named as additional defendants may be

Hence, there is diversity of citizenship.

## III. STATEMENT OF CLAIMS

15 U.S. Code § 1692d- Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) [1] of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Section 53a-142a - Filing a false record: Class D felony

(a) A person is guilty of filing a false record against real or personal property when with intent to defraud, deceive, injure or harass another, he or she files, or causes to be filed with a municipality, a record he or she knows, or reasonably should know, is false. As used in this section, "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form, and includes any record that is recorded in the office of the town clerk.

(b) A person is guilty of filing a false record under sections 42a-9-501 to 42a-9-526, inclusive, when with intent to defraud, deceive, injure or harass another, he or she files, or causes to be filed with the Secretary of the State or a municipality, a record he or she knows, or reasonably should know, is false.

(c) Filing of a false record is a class D felony.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| Ten-Ex Commercial Real Estate, et al. | : |
| Defendants. | :     June __, 2023 |

EXHIBIT _____

# MEMORANDUM

August 15, 2016

RE:    Update Refinancing of 200 Pemberwick Road / 0 Comly Avenue, Greenwich, Connecticut 06831

-------------------------------------------------------------------------------------------------------------------------

1. **Reasons for Refinancing**

    a. **Lot split approvals secured.** Landlord will, as part of the refinancing, transfer title to each of the two tax parcels that comprise the Subject Property to enable separate ownership and financing going forward.  Landlord secured subdivision approval July 8, 2016 enabling this ownership split.

    b. **Pay Principal loan.**  Because of Landlord's ongoing appeal from the Lawsuit and its judgment lien on the property the Principal loan due in 2013 was extended as refinancing was impossible.  A $1,000,000 letter of credit already in place was continued and Landlord agreed that it could be drawn on if loan had not been paid by Landlord by Feb 1, 2016.  When Landlord was unable to pay the Principal loan, and the planned refinancing with BankWell was delayed because of a zoning / subdivision issue resolved successfully per 1(a) above, the $1,000,000 letter of credit was drawn by Principal "in exchange for" extending the loan for another year.  Landlord has paid Principal $20,000 for its lawyers to draft the extension, which Principal says has been done, but said papers have not been executed as Principal wishes to further monitor the status of the lawsuit and a potential refinancing prior to formally extending until February 1, 2017.

    c. **Pay litigation costs.** *Silver v Pascarella* was a contract law dispute between my father, Henry Pascarella, and, Bob Silver, a man that my father once described as his "friend, confidant and [client]".  Silver and my father entered into a handwritten "Participation Agreement" in 1997 which was the basis for the lawsuit. Silver then borrowed money

and signed a Note with a cross-default in the Participation Agreement.  Silver never paid
on the Note.  My father met with him and gave him a deadline to start paying on the Note
or he was out of the deal reflected in the Participation Agreement.  Silver, who later
testified he did "not believe" my father,  never responded, never paid on the Note and
sued 3 years later.  Ultimately, the court ruled that the verbal notice my father gave Bob
that if he didn't start paying his interest in the 200 Pemberwick Road property would be
extinguished was insufficient to do so.  The court decided that some form of written
notice to Silver was needed to so exclude him from the deal going forward.  Silver has
threatened future lawsuits which we believe will be dismissed on the basis of *res
judicata.*

**2.   Reasons Bankwell loan commitment didn't fund.**

In planning to refinance the Principal loan, Landlord secured a commitment from
BankWell on January 16, 2016.  When the commitment was issued the Lawsuit still had not been
finally decided and was on appeal.  A second commitment was received from NECB on April 6,
2016 for the parking lot parcel.  It was determined after lengthy negotiations with the Town, the
closing attorney for the BankWell loan, and the title company, that in order for the two lenders to
have clean title to their respective parcels a subdivision approval from the Planning and Zoning
Commission was needed.  The time it took to make this determination and then appear before the
planning and zoning commission delayed closing the two loans.  During this time an article
appeared in a legal journal concerning the Litigation.  The article's journalist never asked
Landlord for comment and the resulting article, which among other things omits to mention the
$1 million owed to Landlord by Silver, was read by a BankWell board member who demanded
that the commitment be brought back to committee.  When it was the commitment was
withdrawn.  According to the bank loan officer this was the result of the board member who
demanded a return to committee's negative reaction to the article regarding the litigation.

**3.  Electricity – 2015 P&L**

An accounting of electric costs for 2014, 2015 and 2016 up to now with bills is attached.  At approximately $10,000 per month total, Landlord is responsible for approximately 50% of that cost with the rest paid by InfoGroup.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| Ten-Ex Commercial Real Estate, et al. | : |
| Defendants. | :        June __, 2023 |

EXHIBIT _____

RETURN DATE NOVEMBER 12, 2019 : SUPERIOR COURT

 :

 : JUDICIAL DISTRICT OF

 :

READYCAP COMMERCIAL, LLC : STAMFORD-NORWALK

 :

 : AT STAMFORD

 :

V. :

 :

WH PARCEL I, LLC, :

HENRY W. PASCARELLA, : October 23, 2019

AVERADO PASCARELLA, and :

R.S. SILVER ENTERPRISES, INC. :

## COMPLAINT

Plaintiff ReadyCap Commercial, LLC ("Lender"), by and through its undersigned attorneys, for its complaint against Defendants WH Parcel I LLC ("Borrower"), Henry W. Pascarella and Averado Pascarella (individually and collectively, "Guarantors"), and R.S. Silver Enterprises, Inc. ("Silver Enterprises"), states as follows:

## THE PARTIES

1. Lender is a Delaware limited liability company. Lender is the holder and owner of a commercial mortgage loan secured by real property, improvements thereon, and personal property associated therewith, located at 200 Pemberwick Road, Greenwich, Connecticut (the "Property"). The Property is more particularly bounded and described in the Schedule A property description attached hereto as Exhibit A.

2. Borrower is a Connecticut limited liability company and owns the Property. Borrower's registered agent for service of process is the Pascarella Law Firm, P.C., 675 Steamboat Road, Greenwich, Connecticut 06830.

3.      Henry W. Pascarella is an adult individual residing at 675 Steamboat Road, Greenwich, Connecticut 06830.  Henry Pascarella guaranteed repayment of the mortgage loan held by Lender.

4.      Averado Pascarella is an adult individual residing at 90 Oneida Drive, Greenwich, Connecticut 06830.  Averado Pascarella guaranteed repayment of the mortgage loan held by Lender.

5.      Silver Enterprises is a Connecticut corporation that conducts business in the State of Connecticut.  Silver Enterprises's registered agent for service of process is Harlow, Adams & Friedman, P.C., One New Haven Avenue, Suite 100, Milford, Connecticut 06460.  Silver Enterprises is named as a defendant herein because it claims to have an interest in the Property.

## VENUE AND JURISDICTION

6.      The Court has jurisdiction over Borrower because it is organized in the State of Connecticut, its principal place of business is in the State of Connecticut, it transacts business within the State of Connecticut, and it has consented to jurisdiction within the State of Connecticut.

7.      The Court has jurisdiction over Guarantors because they reside in the State of Connecticut and have consented to jurisdiction within the State of Connecticut.

8.      The Court has jurisdiction over Silver Enterprises because it is a Connecticut corporation.

9.      The Court has *in rem* jurisdiction over the Property because it is located in the City of Greenwich, County of Fairfield, and State of Connecticut.

2

10.    Venue is proper in this Court because the real and personal property at issue is located in the City of Greenwich, County of Fairfield, and State of Connecticut.

## ALLEGATIONS COMMON TO ALL COUNTS

11.    On or about October 25, 2016, Borrower entered into a loan transaction with Lender (the "Loan").

12.    In connection with the Loan, Borrower executed and delivered to Lender's predecessor in interest a Promissory Note dated October 25, 2016, in the original principal amount of $6,300,000.00 (the "Note").  A true and accurate copy of the Note is attached hereto as Exhibit B and incorporated herein by reference.

13.    Also in connection with the Loan, Borrower entered into a Loan Agreement with Lender's predecessor in interest, dated as of October 25, 2016 (the "Loan Agreement").  A true and accurate copy of the Loan Agreement is attached hereto as Exhibit C and incorporated herein by reference.

14.    To secure the indebtedness evidenced by the Note, Borrower executed and delivered to Lender's predecessor in interest that certain Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated October 25, 2016 (the "Security Instrument").

15.    The Security Instrument was recorded on October 25, 2016 in Volume 7151 at Page 19 *et seq.* of the Greenwich land records (the "Land Records").  A true and accurate copy of the Security Instrument, as recorded in 2016, is attached hereto as Exhibit D and incorporated herein by reference.

3

16.    Under the Security Instrument, Borrower granted to Lender's predecessor in interest a lien on the Property.

17.    To further secure the amounts due and owing under the Note, Borrower executed and delivered to Lender's predecessor in interest that certain Assignment of Rents dated October 25, 2016 and recorded on October 25, 2016 in Volume 7151 at Page 33 *et seq.* of the Land Records (the "Assignment of Rents"), pursuant to which Borrower assigned to Lender's predecessor in interest all rents, profits, and income of any other type from the Property.  A true and accurate copy of the Assignment of Rents is attached hereto as Exhibit E and incorporated herein by reference.

18.    Lender's predecessor in interest's security interests in the Property are further evidenced by that certain UCC Financing Statement filed and recorded on October 25, 2016 in Volume 7151 at Page 41 *et seq.* of the Land Records (the "Financing Statement").  A true and accurate copy of the Financing Statement, as recorded in 2016, is attached hereto as Exhibit F and incorporated herein by reference.

19.    As further security for the Loan, Guarantors executed for the benefit of Lender's predecessor in interest that certain Guaranty of Non-Recourse Carve-Outs dated October 25, 2016 (the "Guaranty"), pursuant to which Guarantors guaranteed the payment and performance of certain obligations owed under the Loan Documents (as such term is hereinafter defined).  A true and accurate copy of the Guaranty is attached hereto as Exhibit G and incorporated herein by reference.

4

20.     The Note, Loan Agreement, Security Instrument, Assignment of Rents, Financing Statement, Guaranty, and all other documents and instruments further evidencing, securing, or executed in connection with the indebtedness owed under the Note are sometimes referred to herein collectively as the "Loan Documents." Lender is the current holder and owner of the Loan Documents.

21.     Pursuant to the Loan Documents, Borrower agreed to pay Lender monthly installments of principal and interest.

22.     Also pursuant to the Loan Documents, Borrower agreed to pay Lender's costs and expenses, including, without limitation, Lender's reasonable attorney's fees incurred in connection with enforcing the Loan Documents.

23.     The Loan Documents provide, among other things, that Borrower shall be in default if any sum payable under the Loan Documents is not paid on or before the expiration of ten (10) days from which such payment is due.

24.     Borrower failed to make payments in the amounts as and when called for under the Note and other Loan Documents and such failure continued in excess of 10 days from the date when said payments were due.

25.     As a result of Borrower's ongoing defaults, Lender is entitled to pursue its rights and remedies under the Loan Documents, including foreclosure of the Security Instrument.

5

## COUNT I
(Foreclosure of Security Instrument)

26.     Paragraphs 1 through 25 of the Complaint are incorporated by reference into Count I.

27.     Lender has fulfilled all conditions precedent to the commencement of this action.

28.     The lien of the Security Instrument is a valid lien upon the Property.

29.     The following encumbrance of record upon the Property sought to be foreclosed is prior in right to the lien of Lender and is not affected by this action:

    a.     Access and Parking Agreement by and between WH Parcel II, LLC and WH Parcel I, LLC, dated and recorded October 17, 2016 in Volume 7146 at Page 52 *et seq.* of the Land Records.

30.     The following encumbrance of record upon the Property sought to be foreclosed is subsequent in right to the lien of Lender and is affected by this action:

    a.     Notice of Lis Pendens dated August 27, 2019 recorded by Silver Enterprises on August 28, 2019 in Volume 7553 at Page 97 *et seq.* of the Land Records.

31.     Borrower is the owner of the Property, is in possession of the Property, and is the owner of the equity of redemption of the Property.

## COUNT II
(Suit on Guaranty)

32.     Paragraphs 1 through 35 of the Complaint are incorporated by reference into Count II.

33.     In September of 2019, Silver Enterprises filed a Complaint in the Superior Court for the Judicial District of Stamford/Norwalk, naming as defendants Borrower and other entities owned and controlled by Guarantors, and seeking, among other things, to void Borrower's

6

67560728.3

ownership of the Property because the Property was alleged fraudulently transferred to Borrower by another entity owned and controlled by Guarantors (the "Fraudulent Transfer Complaint"). Lender was not named as a defendant in the Fraudulent Transfer Complaint. A true and correct copy of the Fraudulent Transfer Complaint is attached hereto as Exhibit H.

34.    Under the Guaranty, Guarantors generally have non-recourse liability for the Loan; however, Guarantors have carveout recourse liability for certain types of losses and damages that may be incurred by Lender in connection with the Loan and, also, upon the occurrence of certain events and conditions, the Loan may become fully recourse to Guarantors. Guarantors' carveout liability, and the full-recourse triggers for the Loan, are described in Section 12.1 of the Loan Agreement.

35.    Under Section 12.1(b)(v) of the Loan Agreement, the Loan becomes fully recourse to Guarantors if "Borrower causes or suffers any transfer of any Property or any portion thereof or of any direct or indirect ownerships interest(s) in the Borrower, or any Lien other than a Permitted Lien is filed against the Property, in each such case which is not permitted by this Agreement or any Loan Documents."

36.    Under Section 12.1(b)(v) of the Loan Agreement, if the allegations contained in the Fraudulent Transfer Complaint are true and if Borrower is divested of ownership of the Property, then Guarantors have full-recourse liability to Lender for the entire Loan balance.

37.    Under Section 12.1(a)(iv) of the Loan Agreement, Guarantors are "personally liable to Lender for any loss or damage, including reasonable attorneys' fees, sustained by Lender resulting from … Borrower's or any Guarantor's fraud or intentional misrepresentation."

7

38.     Under Section 12.1(a)(iv) of the Loan Agreement, Guarantors have recourse liability for all losses or damages incurred by Lender resulting from Borrower's or Guarantor's fraud or misrepresentation.  Lender has incurred damages incurred in connection with the fraud described in the Fraudulent Transfer Complaint.

67560728.3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| Ten-Ex Commercial Real Estate, et al. | : |
| Defendants. | :       June __, 2023 |

EXHIBIT _____

OFFERING MEMORANDUM SUPPLEMENT
STRICTLY CONFIDENTIAL

**$162,075,308 (Approximate)**
**Ready Capital Mortgage Trust 2016-3**
Commercial Mortgage Pass-Through Certificates

**ReadyCap Commercial, LLC**
Sponsor and Mortgage Loan Seller
**Ready Capital Mortgage Depositor, LLC**
Depositor
**Ready Capital Mortgage Trust 2016-3**
Issuing Entity

The Ready Capital Mortgage Trust 2016-3 Commercial Mortgage Pass-Through Certificates will represent beneficial ownership interests in Ready Capital Mortgage Trust 2016-3 (the "Issuing Entity"). The Issuing Entity's assets will primarily consist of 61 fixed-rate assets including 42 whole mortgage loans and 19 Senior Participation interests in whole mortgage loans, each secured by first liens on 63 commercial and multifamily properties. The Ready Capital Mortgage Trust 2016-3 Commercial Mortgage Pass-Through Certificates will represent interests in the Issuing Entity only and will not represent the obligations of Ready Capital Mortgage Depositor, LLC (the "Depositor"), ReadyCap Commercial, LLC, as sponsor (the "Sponsor") or any of their respective affiliates, and neither the certificates nor the underlying mortgage loans are insured or guaranteed by any governmental agency or private insurer.

The Class A, Class IO-A, Class IO-B/C/D, Class B, Class C, Class D, Class E, Class F, Class G and Class H certificates (collectively, the "Offered Certificates") are offered hereby. Each class of Offered Certificates will receive distributions of interest, principal or both on the 25th day of each calendar month or the following business day, commencing in December 2016. Credit enhancement will be provided by certain classes of subordinate certificates that will be subordinate to certain classes of certificates as described in this offering memorandum supplement (the "Offering Memorandum Supplement") under "Description of the Certificates—Subordination" and in the base offering memorandum (the "Base Offering Memorandum") under "Description of Credit Support—Subordinate Certificates."

Certain characteristics of the Offered Certificates include:

| Class | Initial Certificate Balance or Notional Balance[1] | Approximate Initial Pass-Through Rate | Assumed Final Distribution Date[2] | Rated Final Distribution Date[3] | Anticipated Rating (Moody's/KBRA)[4] |
|---|---|---|---|---|---|
| Class A | $99,878,000 | 2.95997% | April 2021 | November 2038 | Aaa(sf)/AAA(sf) |
| Class IO-A | $99,878,000 | 3.80894% | April 2021 | November 2038 | Aaa(sf)/AAA(sf) |
| Class IO-B/C/D | $34,036,000 | 3.03353% | February 2026 | November 2038 | NR/AAA(sf) |
| Class B | $14,385,000 | 3.75171% | July 2023 | November 2038 | Aa3(sf)/AAA(sf) |
| Class C | $9,927,000 | 4.98406% | March 2025 | November 2038 | A3(sf)/AA-(sf) |
| Class D | $9,724,000 | 5.62409% | February 2026 | November 2038 | NR/A-(sf) |
| Class E | $10,535,000 | 5.62409% | September 2026 | November 2038 | NR/BBB-(sf) |
| Class F | $5,470,000 | 5.62409% | October 2026 | November 2038 | NR/BB-(sf) |
| Class G | $3,444,000 | 5.62409% | November 2026 | November 2038 | NR/B-(sf) |
| Class H | $8,712,308 | 5.62409% | November 2026 | N/A | NR/NR |

*(Footnotes to table are set forth beneath the first table under "Executive Summary" in this Offering Memorandum Supplement).*

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved these securities or determined that this Offering Memorandum Supplement or the attached Base Offering Memorandum is truthful or complete. Any representation to the contrary is a criminal offense.

Investing in the Offered Certificates involves risks. See "*Risk Factors*" in this Offering Memorandum Supplement and in the Base Offering Memorandum.

THE OFFERED CERTIFICATES HAVE NOT BEEN AND WILL NOT BE REGISTERED OR QUALIFIED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. THE OFFERED CERTIFICATES MAY NOT BE OFFERED OR SOLD EXCEPT (A) WITHIN THE UNITED STATES, TO (1) "QUALIFIED INSTITUTIONAL BUYERS" ("QIBs") AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") OR (2) INSTITUTIONAL "ACCREDITED INVESTORS" ("IAIs") AS DEFINED IN RULE 501(a)(1), (2), (3) OR (7) OF REGULATION D UNDER THE SECURITIES ACT AND (B) OUTSIDE THE UNITED STATES, IN ACCORDANCE WITH REGULATION S UNDER THE SECURITIES ACT ("REGULATION S") TO NON-"U.S. PERSONS" IN "OFFSHORE TRANSACTIONS," AS SUCH TERMS ARE DEFINED IN REGULATION S. ACCORDINGLY, THE OFFERED CERTIFICATES ARE NOT TRANSFERABLE EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS DESCRIBED HEREIN. SEE "NOTICE TO INVESTORS." NO TRANSFER OF AN OFFERED CERTIFICATE MAY BE MADE THAT WOULD CAUSE THE ISSUING ENTITY TO BECOME SUBJECT TO THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT.

The Issuing Entity will be relying on an exclusion or exemption from the definition of "investment company" under the Investment Company Act of 1940, as amended (the "Investment Company Act") contained in Section 3(c)(5) of the Investment Company Act or Rule 3a-7 under the Investment Company Act, although there may be additional exclusions or exemptions available to the Issuing Entity. The Issuing Entity is being structured so as not to constitute a "covered fund" for purposes of the Volcker Rule under the Dodd-Frank Act (both as defined in this Offering Memorandum Supplement). See "*Risk Factors—Risks Related to the Offered Certificates—Legal and Regulatory Provisions Affecting Investors Could Adversely Affect the Liquidity of the Offered Certificates*" and "*Legal Investment*" in this Offering Memorandum Supplement.

The Class A, Class B, Class C and Class D certificates are being offered by Deutsche Bank Securities Inc. ("Deutsche Bank"), J.P. Morgan Securities LLC ("J.P. Morgan") and Performance Trust Capital Partners, LLC ("Performance Trust" and, together with Deutsche Bank and J.P. Morgan, the "Placement Agents") from time to time at varying prices in negotiated transactions subject to prior sale, when, as and if issued. The Placement Agents have agreed to use best efforts to solicit offers to place the Class A, Class B, Class C and Class D certificates. Neither the Issuing Entity nor the Placement Agents are required to make a market in the Offered Certificates. Deutsche Bank will act as the sole structuring agent, co-lead Placement Agent and joint bookrunner, J.P. Morgan will act as the co-lead Placement Agent and joint bookrunner and Performance Trust will act as co-manager. The Placement Agents reserve the right to withdraw, cancel or modify any offer and to reject orders in whole or in part. Placement of the Offered Certificates may be privately effected from time to time in negotiated transactions at varying prices to be determined in each case at the time of sale. As a result, the purchase price paid by any investor in a portion of the Certificates may be higher or lower than the price paid by a different investor in the same class sold in this offering. An affiliate of the Depositor will initially retain the Class IO-A, Class IO-B/C/D, Class E, Class F, Class G and Class H certificates and may retain other classes of certificates, either in part or in their entirety. It is expected that the Class A, Class B, Class C and Class D certificates sold to investors pursuant to Rule 144A will be delivered through the facilities of the Depository Trust Company in the United States and, in the case of the Class A, Class B, Class C and Class D certificates sold to investors pursuant to Regulation S, through Clearstream Banking, société anonyme, and the Euroclear System in Europe, in each case, on or about November 30, 2016 against payment therefor in immediately available funds. See "*Plan of Placement*" in this Offering Memorandum Supplement. Any certificates transferred to IAIs that are not QIBs will be delivered in definitive, fully registered form.

**Deutsche Bank Securities**
Sole Structuring Agent, Co-Lead Placement Agent and Joint Bookrunner

**J.P. Morgan**
Co-Lead Placement Agent and Joint Bookrunner

**Performance Trust**
Co-Manager

The date of this Offering Memorandum Supplement is November 23, 2016

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AP Pascarella | : | |
| Plaintiff, | : | |
| v. | : Case No. _____ | |
| Ten-Ex Commercial Real Estate, et al. | : | |
| Defendants. | : | June __, 2023 |

EXHIBIT _____

| DOCKET NO: FST CV 6044279-S | : | SUPERIOR COURT |
|---|---|---|
| | : | JUDICIAL DISTRICT OF |
| READYCAP COMMERCIAL, LLC | : | STAMFORD-NORWALK |
| | : | AT STAMFORD |
| V. | : | |
| WH PARCEL I, LLC, | : | |
| HENRY W. PASCARELLA, | : | January 24, 2020 |
| AVERADO PASCARELLA, and | : | |
| R.S. SILVER ENTERPRISES, INC. | : | |

## ORDER APPOINTING RECEIVER OF RENTS

Plaintiff filed its Motion for Appointment of Receiver of Rents requesting that the Court appoint a receiver over the property that Plaintiff seeks to foreclose in this action.  The Court has reviewed the papers filed in this matter and has heard statements of counsel, if any.  Being duly advised in the premises and for good cause shown, the Court hereby finds and orders as follows:

1.     Ian V. Lagowitz of IVL Group, LLC (hereinafter, the "Receiver") shall be appointed as receiver of rents to take possession and control of the Property, to collect the rents, profits, and income from the Property, and to administer all proceeds of the Property in accordance with law, and undertake the following other and further tasks:

(a)     the Receiver is appointed to act and serve as receiver with respect to the Property and with respect to the income therefrom, whether now existing or hereafter collected, including the rents, revenues and income from the Property;

(b)      effective immediately, the Receiver shall take over and have exclusive control over the Borrower's operating account(s) for the Property;

(c)      effective immediately, the Receiver shall take any and all actions the Receiver deems reasonable and appropriate to prevent waste to and to preserve, secure, manage, maintain

711164112.2

and safeguard the Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

(d)    effective immediately, Borrower, and all persons acting under its direction, and any other current manager of the Property, shall deliver to the Receiver, without any right of offset or recoupment, including: (1) all leases and communication and correspondence files relating thereto; (2) a current list of the occupants and tenants of the Property, including all data with respect to each occupant and tenant also known as a rent roll; (3) any and all accounts receivable and accounts payable reports; (4) any and all documents pertaining to any ongoing litigation, property tax appeals/refunds, insurance claims/proceeds and five years of loss history; (5) any and all documents pertinent to any licenses maintained in connection with the Property, and all communications and correspondence pertinent thereto; (6) any and all documents pertinent to any agreements entered into in connection with the Property, and all communications and correspondence pertinent thereto; (7) any and all contracts in effect with respect to any of the Property, and all communications, information and correspondence pertinent thereto including all marketing brochures, photographs of any kind (including aerial photographs) , title reports, (8) any and all contracts, bids or other materials relating to any contractor work at the Property; (9) any and all bank statements relating to any accounts associated with the Property; (10) Borrower's FEIN; and (11) any other records pertaining to the management of the Property;

(e)    effective immediately, Borrower, and all persons acting under its direction, and any other manager of the Property, are enjoined from in any manner disturbing the Receiver's possession of the Property or any other property that is the subject of the Court's Order, and are prohibited and restrained from (1) disposing of, dissipating, mishandling or misappropriating any of the Property, (2) taking any actions that would, directly or indirectly, have an adverse impact

2

on the value of the Property, (3) canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Property, and (4) collecting any rents or other sums due to Borrower, related to the Property, all until further order of the Court;

(f)      the Receiver is immediately vested with (and Borrower and its respective agents shall immediately deliver) the books and records with respect to the operation of the Property, including (to the extent in Borrower's possession or control) any and all Property information related to: (1) rent rolls and leases affecting the Property; (2) amounts paid by lessees and other obligors of Borrower; (3) liens, encumbrances and other interests against or affecting the Property; (4) property taxes owed by Borrower; (5) all types of insurance affecting the Property, including any master policies (which Borrower shall not act to terminate or modify); (6) plans (including floor plans and space plans), stacking plans, specifications, surveys, maps, and drawings of the Property; (7) all operating statements of Borrower; (8) all maintenance manuals for any equipment located at the Property; (9) all documentation relating to zoning with respect to the Property; (10) all documentation relating to subsidized housing; and (11) all other aspects of the Property, including intellectual property (including websites and domain names) and the operation and management thereof;

(g)      the Receiver is authorized to continue to manage, operate, lease  and market for lease the Property;

(h)      the Receiver is authorized to retain SVN CompassRock as the property manager and listing agent (hereinafter, "Manager") for the Property, to be compensated pursuant to the terms of this Order;

(i)      the Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property and has no

3

obligation to pay pre-receivership expenses of any kind unless he determines that such payments may benefit the Property;

(j)    the Receiver is authorized (1) to maintain appropriate insurance, (2) to continue any current insurance policies in place, which Borrower, shall not act to discontinue or impair in any way, (3) to add itself and Plaintiff as an additional insured under any current insurance policy, and Borrower, shall fully cooperate with the Receiver in Receiver's efforts to do so

(k)    the Receiver is authorized to pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against the Property;

(l)    the Receiver is authorized to: (1) negotiate and enter into any new leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance of the Property, including but not limited to all repairs necessary to remediate any environmental, fire or life-safety conditions present at the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs or remediation having a cost of $5,000.00 or more without first obtaining further approval of Plaintiff or the Court; (5) take all steps necessary to comply with all requirements, regulations and laws, including but not limited to environmental or health requirements, regulations and laws, applicable to the Property, and to deal with all

4

regulatory authorities in connection with the same, and Receiver shall have no liability for any environmental claims or other municipal code violations existing as of the date of this Order; and (6) the Receiver is authorized, but not required, to execute, enforce, amend, or terminate any existing contracts affecting the Property without further obligation or liability and the Receiver shall not be obligated to pay any termination fees in connection therewith;

(m)    the Receiver is authorized to, in its discretion, institute, prosecute, defend, compromise and intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect rents and other amounts now or hereafter becoming due, or to remove tenants or other persons or entities from the Property, and to defend against any action brought against the Receiver or Manager acting in such capacity, and is further authorized to retain counsel to assist in connection with the foregoing (which may be Plaintiff's counsel) and to seek reimbursement of any fees or costs incurred by Receiver or Manager in connection with the utilization of such counsel;

(n)    the Receiver is authorized to enter into further lending transactions by which Plaintiff may lend monies to the Receiver (on a nonrecourse basis as to Receiver) to enable the Receiver to perform its duties hereunder, in which case any monies loaned shall be secured by a first and prior lien and security interest on the Property in favor of Plaintiff, pursuant to the existing Loan Documents (as defined in Plaintiff's motion seeking appointment of a receiver);

(o)    the Receiver may apply and utilize income from the Property, subject to the lien rights of Plaintiff, as follows: (1) to pay the Receiver's and Manager's approved fees and expenses; (2) to pay current operating expenses of the receivership incurred by the Receiver in

5

the ordinary course of business; and (3) to pay the obligations owed to Plaintiff under the Loan Documents or otherwise;

(p)     the Receiver shall be paid, without further order of the Court, the greater of $175 per hour or $1,000 per month.  Manager shall be paid as follows:  (1) a monthly property management fee equal to the greater of 5% of gross monthly revenue from the Property or $2,500.00; and (2) a one-time start-up fee equal to the first full month's property management fee.  For any new leases obtained by Manager for the Property, Manager shall be paid a 7% commission if the tenant is represented by a broker or a 3% commission if the tenant is not represented by a broker.  For any renewal or expansion lease obtained by Manager for the Property, Manager shall be paid a 4% commission if the tenant is represented by a broker or a 3% commission if the tenant is not represented by a broker.  For construction management services relating to capital improvements and tenant finish improvements, Manager shall be paid a 2.5% fee if construction costs exceed $500,000, a 4% fee if construction costs are greater than $250,000 and equal to or less than $500,000, or a 5% fee if construction costs are greater than $15,000 and equal to or less than $250,000.  If construction costs are equal to or less than $15,000, Manager shall not be paid a fee for construction management services.  The Receiver shall also be entitled to reimbursement of any reasonable out-of-pocket costs, including the cost of its Receiver bond, if any, and courier, express shipping, and postage costs.  The foregoing shall be the sole compensation payable to the Receiver and Manager, notwithstanding any engagements made by the Receiver and notwithstanding any amount of monies that may be distributed by the Receiver to Plaintiff or any other person or entity in the course of the receivership, and such compensation shall be payable in arrears on a monthly basis;.

6

71164112.2

(q)    nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the receivership that have been approved by Plaintiff and this Court;

(r)    the Receiver may apply at any time to this Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill its duties;

(s)    the entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff under the Loan Documents or under applicable law;

(t)    the entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Borrower, and the Receiver shall abide by the terms of any such consensual resolution;

(u)    any action of the Receiver authorized in this Order shall require the consent of Plaintiff if and when such action, if undertaken by the Borrower, would require Plaintiff's consent or authorization under any Loan Document;

(v)    all furniture, fixtures, supplies and equipment of any kind, including, but not limited to, any motor vehicles and related items, shall remain on-site together with all warranties of any kind, licenses, permits, titles, work order histories and other information related to the same;

7

Dated:  January 24, 2020

Respectfully submitted:

THE PLAINTIFF,

READYCAP COMMERCIAL, LLC


By:   /s/427637
Timothy P. Moylan
DISERIO MARTIN O'CONNOR &
CASTIGLIONI LLP #102036
One Atlantic Street
Stamford, CT  06901
(203) 358-0800

-and-

Aaron C. Jackson (MO #59392)
(*request for pro hac vice admission to be filed*)
POLSINELLI PC
900 West 48th Place, Suite 900
Kansas City, Missouri 64112
(816) 753-1000
Fax No. (816) 753-1536
ajackson@polsinelli.com

8

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above was mailed on January 24, 2020 to all counsel and pro se parties of record as follows:

PASCARELLA LAW FIRM PC
675 STEAMBOAT ROAD
GREENWICH, CT 06830
**info@pascarellalaw.com**

HARLOW ADAMS & FRIEDMAN PC
ONE NEW HAVEN AVENUE
SUITE 100
MILFORD, CT 06460
**twm@haflaw.com**

/s/ Timothy P. Moylan, #427637
Timothy P. Moylan

9

71164112.2

You have successfully e-filed!                                                                                          Page 1 of 1

## State of Connecticut Judicial Branch
# Superior Court E-Filing



**Attorney/Firm:** DISERIO MARTIN OCONNOR & CASTIGLIONI (102036)          **E-Mail:** pchiavon@dmoc.com    Logout

Hide Instructions                    **You have successfully e-filed!**

**Instructions:** The information about the item you filed is on this confirmation page. You must print a copy of this page for your records. Choose **Print This Page** at the top of the page to print your copy.

Choose **E-File Another Pleading/Motion/Other on this Case** to go back to the **Select a Motion** page to choose another document name and file another document.

Choose **Return to Superior Court E-Filing Menu** to go back to the menu page.

Choose **Return to Case Detail** to look at the documents filed in this case or to file a reclaim in this case.

| Print This Page |

### Confirmation of E-filed Transaction  (print this page for your records)

| | |
|---|---|
| **Docket Number:** | FST-CV-19-6044279-S |
| **Case Name:** | READYCAP COMMERCIAL, LLC v. WH PARCEL I, LLC Et Al |
| **Type of Transaction:** | Pleading/Motion/Other document |
| **Date Filed:** | Jan-24-2020 |
| **Motion/Pleading by:** | DISERIO MARTIN OCONNOR & CASTIGLIONI (102036) |
| **Document Filed:** | 117.00 PROPOSED ORDER |
| | |
| **Date and Time of Transaction:** | Friday, January 24, 2020 4:32:43 PM |

| E-File Another Pleading/Motion/Other document on this Case |

| Return to Civil / Family Menu | | Return to Case Detail |

Copyright © 2020, State of Connecticut Judicial Branch

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AP Pascarella                                          :
Plaintiff,                                             :
v.                                                     : Case No. _____

Ten-Ex Commercial Real Estate, et al.                  :

Defendants.                                            :        June __, 2023


EXHIBIT _____

DOCKET NO: FST CV 6044279-S     :     SUPERIOR COURT

:     JUDICIAL DISTRICT OF

READYCAP COMMERCIAL, LLC     :     STAMFORD-NORWALK

:     AT STAMFORD

V.     :

:

WH PARCEL I, LLC,     :
HENRY W. PASCARELLA,     :     January 24, 2020
AVERADO PASCARELLA, and     :
R.S. SILVER ENTERPRISES, INC.     :

## ORDER APPOINTING RECEIVER OF RENTS

Plaintiff filed its Motion for Appointment of Receiver of Rents requesting that the Court appoint a receiver over the property that Plaintiff seeks to foreclose in this action.  The Court has reviewed the papers filed in this matter and has heard statements of counsel, if any.  Being duly advised in the premises and for good cause shown, the Court hereby finds and orders as follows:

1.      Ian V. Lagowitz of IVL Group, LLC (hereinafter, the "Receiver") shall be appointed as receiver of rents to take possession and control of the Property, to collect the rents, profits, and income from the Property, and to administer all proceeds of the Property in accordance with law, and undertake the following other and further tasks:

(a)      the Receiver is appointed to act and serve as receiver with respect to the Property and with respect to the income therefrom, whether now existing or hereafter collected, including the rents, revenues and income from the Property;

(b)      effective immediately, the Receiver shall take over and have exclusive control over the Borrower's operating account(s) for the Property;

(c)      effective immediately, the Receiver shall take any and all actions the Receiver deems reasonable and appropriate to prevent waste to and to preserve, secure, manage, maintain

WH PARCEL I, LLC — 200 Pemberwick Road, Greenwich, Connecticut                    Docket No: FST CV 6044279-S
April 2023 — Receiver's Report

## COURT ORDER APPOINTING RECEIVER (DATED 01/24/2020)

and safeguard the Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

(d)    effective immediately, Borrower, and all persons acting under its direction, and any other current manager of the Property, shall deliver to the Receiver, without any right of offset or recoupment, including: (1) all leases and communication and correspondence files relating thereto; (2) a current list of the occupants and tenants of the Property, including all data with respect to each occupant and tenant also known as a rent roll; (3) any and all accounts receivable and accounts payable reports; (4) any and all documents pertaining to any ongoing litigation, property tax appeals/refunds, insurance claims/proceeds and five years of loss history; (5) any and all documents pertinent to any licenses maintained in connection with the Property, and all communications and correspondence pertinent thereto; (6) any and all documents pertinent to any agreements entered into in connection with the Property, and all communications and correspondence pertinent thereto; (7) any and all contracts in effect with respect to any of the Property, and all communications, information and correspondence pertinent thereto including all marketing brochures, photographs of any kind (including aerial photographs) , title reports, (8) any and all contracts, bids or other materials relating to any contractor work at the Property; (9) any and all bank statements relating to any accounts associated with the Property; (10) Borrower's FEIN; and (11) any other records pertaining to the management of the Property;

(e)    effective immediately, Borrower, and all persons acting under its direction, and any other manager of the Property, are enjoined from in any manner disturbing the Receiver's possession of the Property or any other property that is the subject of the Court's Order, and are prohibited and restrained from (1) disposing of, dissipating, mishandling or misappropriating any of the Property, (2) taking any actions that would, directly or indirectly, have an adverse impact

2

on the value of the Property, (3) canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Property, and (4) collecting any rents or other sums due to Borrower, related to the Property, all until further order of the Court;

(f)      the Receiver is immediately vested with (and Borrower and its respective agents shall immediately deliver) the books and records with respect to the operation of the Property, including (to the extent in Borrower's possession or control) any and all Property information related to: (1) rent rolls and leases affecting the Property; (2) amounts paid by lessees and other obligors of Borrower; (3) liens, encumbrances and other interests against or affecting the Property; (4) property taxes owed by Borrower; (5) all types of insurance affecting the Property, including any master policies (which Borrower shall not act to terminate or modify); (6) plans (including floor plans and space plans), stacking plans, specifications, surveys, maps, and drawings of the Property; (7) all operating statements of Borrower; (8) all maintenance manuals for any equipment located at the Property; (9) all documentation relating to zoning with respect to the Property; (10) all documentation relating to subsidized housing; and (11) all other aspects of the Property, including intellectual property (including websites and domain names) and the operation and management thereof;

(g)      the Receiver is authorized to continue to manage, operate, lease  and market for lease the Property;

(h)      the Receiver is authorized to retain SVN CompassRock as the property manager and listing agent (hereinafter, "Manager") for the Property, to be compensated pursuant to the terms of this Order;

(i)      the Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property and has no

3

obligation to pay pre-receivership expenses of any kind unless he determines that such payments may benefit the Property;

(j)      the Receiver is authorized (1) to maintain appropriate insurance, (2) to continue any current insurance policies in place, which Borrower, shall not act to discontinue or impair in any way, (3) to add itself and Plaintiff as an additional insured under any current insurance policy, and Borrower, shall fully cooperate with the Receiver in Receiver's efforts to do so

(k)      the Receiver is authorized to pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against the Property;

(l)      the Receiver is authorized to: (1) negotiate and enter into any new leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance of the Property, including but not limited to all repairs necessary to remediate any environmental, fire or life-safety conditions present at the Property, in order to preserve the Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs or remediation having a cost of $5,000.00 or more without first obtaining further approval of Plaintiff or the Court; (5) take all steps necessary to comply with all requirements, regulations and laws, including but not limited to environmental or health requirements, regulations and laws, applicable to the Property, and to deal with all

4

regulatory authorities in connection with the same, and Receiver shall have no liability for any environmental claims or other municipal code violations existing as of the date of this Order; and (6) the Receiver is authorized, but not required, to execute, enforce, amend, or terminate any existing contracts affecting the Property without further obligation or liability and the Receiver shall not be obligated to pay any termination fees in connection therewith;

(m)    the Receiver is authorized to, in its discretion, institute, prosecute, defend, compromise and intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect rents and other amounts now or hereafter becoming due, or to remove tenants or other persons or entities from the Property, and to defend against any action brought against the Receiver or Manager acting in such capacity, and is further authorized to retain counsel to assist in connection with the foregoing (which may be Plaintiff's counsel) and to seek reimbursement of any fees or costs incurred by Receiver or Manager in connection with the utilization of such counsel;

(n)    the Receiver is authorized to enter into further lending transactions by which Plaintiff may lend monies to the Receiver (on a nonrecourse basis as to Receiver) to enable the Receiver to perform its duties hereunder, in which case any monies loaned shall be secured by a first and prior lien and security interest on the Property in favor of Plaintiff, pursuant to the existing Loan Documents (as defined in Plaintiff's motion seeking appointment of a receiver);

(o)    the Receiver may apply and utilize income from the Property, subject to the lien rights of Plaintiff, as follows: (1) to pay the Receiver's and Manager's approved fees and expenses; (2) to pay current operating expenses of the receivership incurred by the Receiver in

the ordinary course of business; and (3) to pay the obligations owed to Plaintiff under the Loan Documents or otherwise;

(p)     the Receiver shall be paid, without further order of the Court, the greater of $175 per hour or $1,000 per month.  Manager shall be paid as follows:  (1) a monthly property management fee equal to the greater of 5% of gross monthly revenue from the Property or $2,500.00; and (2) a one-time start-up fee equal to the first full month's property management fee.  For any new leases obtained by Manager for the Property, Manager shall be paid a 7% commission if the tenant is represented by a broker or a 3% commission if the tenant is not represented by a broker.  For any renewal or expansion lease obtained by Manager for the Property, Manager shall be paid a 4% commission if the tenant is represented by a broker or a 3% commission if the tenant is not represented by a broker.  For construction management services relating to capital improvements and tenant finish improvements, Manager shall be paid a 2.5% fee if construction costs exceed $500,000, a 4% fee if construction costs are greater than $250,000 and equal to or less than $500,000, or a 5% fee if construction costs are greater than $15,000 and equal to or less than $250,000.  If construction costs are equal to or less than $15,000, Manager shall not be paid a fee for construction management services.  The Receiver shall also be entitled to reimbursement of any reasonable out-of-pocket costs, including the cost of its Receiver bond, if any, and courier, express shipping, and postage costs.  The foregoing shall be the sole compensation payable to the Receiver and Manager, notwithstanding any engagements made by the Receiver and notwithstanding any amount of monies that may be distributed by the Receiver to Plaintiff or any other person or entity in the course of the receivership, and such compensation shall be payable in arrears on a monthly basis;.

6

(q)     nothing contained in this Order shall be construed as obligating the Receiver to advance its own funds in order to pay the costs and expenses of the receivership that have been approved by Plaintiff and this Court;

(r)     the Receiver may apply at any time to this Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill its duties;

(s)     the entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff under the Loan Documents or under applicable law;

(t)     the entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Borrower, and the Receiver shall abide by the terms of any such consensual resolution;

(u)     any action of the Receiver authorized in this Order shall require the consent of Plaintiff if and when such action, if undertaken by the Borrower, would require Plaintiff's consent or authorization under any Loan Document;

(v)     all furniture, fixtures, supplies and equipment of any kind, including, but not limited to, any motor vehicles and related items, shall remain on-site together with all warranties of any kind, licenses, permits, titles, work order histories and other information related to the same;

7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AP Pascarella                                        :

Plaintiff,                                           :

v.                                                   : Case No. _____

Ten-Ex Commercial Real Estate, et al.               :

Defendants.                                          :        June __, 2023

EXHIBIT _____

## LEASE

THIS LEASE dated as of the 9th day of June, 2021, by and between **IAN V. LAGOWITZ OF IVL GROUP, LLC, IN HIS SOLE CAPACITY AS RECEIVER** (hereinafter referred to as **"Receiver"**) FOR **WATERFALL HOLLOW, LLC,** a Delaware limited liability company, as agent for WH Parcel I LLC, a Connecticut limited liability company PURSUANT TO THAT ORDER APPOINTING RECEIVER OF RENTS DATED JANUARY 24, 2020, in the case READYCAP COMMERCIAL, LLC, BY AND THROUGH KEY BANK, SOLELY AS SPECIAL SERVICER, having an address at c/o IVL Group, LLC, 24 Church Street, Montclair, New Jersey 07042 (hereinafter referred to as **"Landlord"**) and **THE CEDAR SCHOOL LLC,** a Connecticut limited liability company, having an address of 56 Stonehedge Drive South, Greenwich, Connecticut 06831 (hereinafter referred to as **"Tenant"**).

### WITNESSETH THAT:

WHEREAS, Tenant wishes to lease, rent and hire the premises described herein from the Landlord and Landlord wishes to lease same to Tenant;

NOW, THEREFORE, in consideration of the agreements set forth below, the parties agree as follows:

1.    **DEMISED PREMISES AND COMMON AREAS.**

(a)    Landlord hereby leases to Tenant, and Tenant hereby hires from Landlord, upon the terms, covenants and conditions hereinafter set forth, those certain premises consisting of FIFTEEN THOUSAND ONE HUNDRED NINETY-NINE (15,199) rentable square feet as are more particularly set forth and described in the drawing attached to this Lease as Exhibit A (the **"Demised Premises"**), located on the SECOND floor of the building known as the Main "C" Building at 200 Pemberwick Road, Greenwich, Connecticut (the **"Building"**).

(b)    Landlord hereby also grants to Tenant the non-exclusive right to use all common areas associated with the Building (the **"Common Areas"**), which are defined herein as all areas and facilities outside the Demised Premises contained in, or related to, the Building that are provided for the general use and convenience of Tenant and of other tenants of rental space in the Building and their respective agents, employees, contractors, clients, or invitees. The Common Areas include the parking facilities; pedestrian walkways; lawns; landscaped areas; sidewalks; restrooms; stairways; service corridors; throughways; the lobby on the first floor; and the elevator servicing the Building. The Landlord makes no representations or warranties as to what shall, from time to time, constitute Common Areas and reserves the right at its sole discretion, to alter and reconfigure the Common Areas, provided that Tenant's access to the Demised Premises is legally compliant and not materially impaired and the number of reserved and unreserved parking spaces allocated to Tenant under Section 26 below are not reduced. Landlord shall have the right to temporarily suspend the use of all, or any portion of, the Common Areas if required to comply with laws or the requirements of Landlord's insurers, or to make any repairs, improvements, changes, or alterations thereto, including, but not limited to, Tenant's Improvements (as defined in Section 11(d) below), or if necessary for the maintenance of the Common Areas provided, however, that Tenant shall always be provided with legally compliant access to the Demised

77910533.3

IN WITNESS WHEREOF, this Lease is hereby executed and delivered as of the date first above written.

In The Presence Of:

LANDLORD:

IAN V. LAGOWITZ OF IVL GROUP, LLC, IN HIS SOLE CAPACITY AS RECEIVER FOR WATERFALL HOLLOW, LLC, as agent for WH PARCEL, LLC, PURSUANT TO THAT ORDER APPOINTING RECEIVER OF RENTS DATED JANUARY 24, 2020

By: _____
Name: Ian Lagowitz
Title: Receiver

TENANT:

THE CEDAR SCHOOL LLC

By: _____Clay Kaufman_____

Print Title: _____Head of School_____

STATE OF _____Maryland_____ )
                              ) ss:
COUNTY OF _____Prince George_____ )

On this _9th_ day of _June_____, 20_21_, before me personally came _Clay Kaufman_ and acknowledged himself to be the _Head of School_ of _The Cedar School_, a _____ limited liability company, and further acknowledged that he, as such _Head of School_, being authorized so to do, executed the foregoing instrument, as his free act and deed and the free act and deed of the Landlord.

REZWAN KHAN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires
08/19/2023

Notary Public _____

My Commission Expires:
08/19/2023

779105313

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| | |
| Ten-Ex Commercial Real Estate, et al. | : |
| | |
| Defendants. | :      June __, 2023 |

EXHIBIT _____

STATE OF CONNECTICUT

DOCKET NO. FST-CV-19-6044279-S

| | | |
|---|---|---|
| READYCAP COMMERCIAL, LLC | ) | SUPERIOR COURT |
| Plaintiff | ) | JUDICIAL DISTRICT OF |
| | ) | STAMFORD/NORWALK |
| v. | ) | AT STAMFORD |
| WH PARCEL I, LLC, et al | ) | |
| Defendants | ) | FEBRUARY 12, 2023 |

## AFFIDAVIT REGARDING

## ERRORS IN COMPUTATION OF PLAINTIFF'S AFFIDAVIT OF DEBT AND

## OTHER RECEIVER & PLAINTIFF'S APPRAISAL IRREGULARITIES

| | |
|---|---|
| STATE OF CONNECTICUT | ) |
| | ) ss: |
| COUNTY OF FAIRFIELD | ) |

Then and there personally appeared, Brent Carrier, who, being duly sworn, deposes and says as follows:  I am over the age of eighteen (18) years and believe in the obligation of an oath.  I am a principal in CRE Development, a real estate investment company with over 25 years of experience in the field of commercial real estate investment, valuation, development, and property management.  I have personally evaluated the Order Appointing Receiver of Rents, ReadyCap Debt Affidavit, Receiver's Reports, the Cross Easement, and the Plaintiff ReadyCap's Cushman & Wakefield Appraisal (all regarding 200 Pemberwick Road, Greenwich, Connecticut (the "Property") in this matter and am authorized and competent to make this affidavit.

## I.    FACTUAL BACKGROUND

In preparing this affidavit, CRE Development ("CRE") has reviewed:

1. The Receiver was appointed as the Receiver of Rents, and charged to perform certain duties pursuant to a Court Order dated January 24, 2020 attached hereto as Exhibit A ("Court Order");

2. The Receiver reports filed with the Court monthly between February 2021 and January 2023;

3. The Plaintiff ReadyCap's attested to Affidavit of Debt dated September 26, 2022 is attached hereto as Exhibit B ("ReadyCap Debt Affidavit");

4. Plaintiff ReadyCap's Cushman & Wakefield authored Appraisal Report dated as of January 13, 2022, is attached hereto as Exhibit C ("ReadyCap's 2022 Cushman & Wakefield Appraisal"); and

5. A reciprocal easement agreement between WH Parcel I LLC (a defendant here) and WH Parcel II LLC (not a party to this lawsuit), the owner of the parcel that provides parking for the Property, dated October 17, 2016 is attached hereto as Exhibit C-2 (the "Cross Easement")

and has found several discrepancies, omissions, and apparent errors that should be addressed in thorough detail, in a trial, with witnesses, as summarized below.

## II.    ERRORS IN COMPUTATION OF PLAINTIFF'S AFFIDAVIT OF DEBT

6. **Plaintiff** attested to the ReadyCap Debt Affidavit on September 26, 2022 attached hereto as Exhibit B which appears to be inaccurate and intentionally misleading in (at least) the following ways:

   6.1. Plaintiff appears to have inappropriately added $2,142,643 to Defendant's loan balance, a lending transaction it ostensibly made to the Receiver under the Court Order, and not, as accounted for by ReadyCap, to the Defendants.  Advances under the Court Order are only authorized "to enable the Receiver to Perform its duties hereunder", and Plaintiff was not authorized to further add to Defendants' debt obligations.  The Court Order specifically states (page 5, paragraph (n)) any such approved funds were to be evidenced by a further

lending transaction "to the Receiver" on a non-recourse basis, secured by a first and prior lien and security interest on the Property, and advanced "to Receiver" in a loan with priority to Defendants existing indebtedness.

6.2. Plaintiff appears to have failed to fully disclose or properly credit Defendant for the $710,000 it received from The Cedar School (Exhibit D), a commercial tenant the Plaintiff and Receiver contracted with to occupy the entire second floor of the Property's north building (15,199 square feet at a lease rate of $15.70 per square foot) despite Defendant's hard fought approvals (Exhibit E) to install residential occupants throughout the entire second floor of the Property (21,360 square feet at a supportable prospective lease rate of $80.00 per square foot).

6.2.1.  CRE notes that the gross income differential Plaintiff generated from office leasing to the Cedar School ($238,729 per year), instead of following Defendants previously approved multifamily residential use ($1,708,800 per year), results in an annual loss of potential rent of $1,470,071, directly causing $14,700,710 in lost potential revenue to Defendants over the entire term of the Cedar School's lease.

6.3. At the September 28, 2022 hearing at which ReadyCap's motion for strict foreclosure was granted, approximately $2,000,000 was reported to the Court as advances due and owing from Defendants (funded by Plaintiff), and subject to collection at the substantially higher default interest rate against Defendants, however this amount was actually not expended in full, with nearly 50% (some $900,000) still sitting in the Receivers operating account at the time of the September 28 hearing.

6.4. Plaintiff is reported to have advanced $2,142,643 to the Receiver, for building improvements, for a total Property investment of $2,852,643 (adding tenant Cedar School's $710,000 contribution).   This resulted in an unconscionable waste of financial resources, especially considering Plaintiff ReadyCap's own 2022 Cushman & Wakefield Appraisal. The Appraisal suggests a low $7.35 million value for the Property and that spending an additional $1.7 million could increase the Property's value by $2.2 million. Instead, Receiver spent another $2.8 million to attempt to create $2.2 million in value. The apparent reason to spend more than the value you create, in a case like this, would be to enrich the Receiver with exorbitant fees, while further encumbering Defendants.

III.    **RECEIVER ACTS DETRIMENTAL TO PROPERTY VALUE AND DEFENDANTS' RIGHTS**

7. **Receiver** appears to have vastly exceeded the authorization granted in the Court Order, and further failed to uphold its obligations to maintain and care for the Property in (at least) the following ways:

7.1. As noted in Section 5.4 above, the Receiver has expended inordinate funds on inappropriate office improvements, while structuring $2 million of third-party work contracts with SVN in such a way as to double the fees payable to the Receiver (from 2.5% to 5%), by drafting numerous smaller contracts instead of fewer large contracts to take advantage of the Court Order's increased fee schedule for work projects of less than $250,000 each.

7.2. Receiver appears to have taken actions impairing the financial viability of the Property by executing long term, below market office leases and renewals, further damaging and diminishing the Property's value and impairing Defendants' ability to pursue residential

redevelopment plans and repay legitimate debt, while ignoring Defendants in-hand residential redevelopment approvals. (Exhibit E)

7.3. Receiver has overtly interfered with the Defendants rights to realize it's Property's additional true prospective market value under the State of CT 8-30(g) Set Aside Affordable Housing regulations (Exhibit F & G)

7.3.1. Receiver has even further inserted itself into a process of impairing Defendants property rights and financial viability by testifying in a January 10, 2023 public Greenwich Planning and Zoning Commission hearing for Defendant's planned multifamily development. In doing so, the Receiver ignored a cease-and-desist letter from CRE advising it against interfering, and

7.3.1.1. claimed more authority and greater powers than the Court Order grants;

7.3.1.2. stated that only the Receiver was authorized to take action to enhance the property value, misrepresenting Receiver's role in the redevelopment;

7.3.1.3. claimed that the Cross Easement agreement provides the Receiver with control or approval rights over WH Parce II LLC's development rights (which it does not); and

7.3.1.4. omitted to mention that Plaintiff ReadyCap / the Receiver are obligated under the Cross Easement to be financially responsible for 50% of the anticipated $30 million parking lot replacement under WH Parcel II LLC's upcoming multifamily building development.

7.3.2.  Tellingly, later in the Zoning Hearing, the head of Planning & Zoning for The Town of Greenwich stated that the Town Attorney's conclusion, based on the plain language of the Court Order, was the opposite of the Receiver's assertions and opined that CRE Development as authorized by the Property owner was indeed appropriately before the board seeking Defendant's land use approvals. (Exhibit H & I).

7.4.  Receiver has failed to adhere to this Court's Order, and adhere to regulatory health and safety mandates for the Property's occupants, as evidenced by:

7.4.1.  Expired elevator safety certification:  There is a single elevator that services the second floor including The Cedar School space, however, that elevator seems to have a hydraulic oil leak and makes noises that reportedly scare some of the school's students into taking the stairs, demonstrating Receiver's failure to maintain the elevator in safe and good working condition (Exhibit J)

7.4.2.  Failure to complete State of Connecticut mandated Environmental Remediation: the Property has volatile organic compounds (VOCs) that were partially remediated in the 1980s and require additional remediation now. Even though ReadyCap was supposed to be holding a separate account with funds set aside for said remediation, it has neither accounted for those set-aside funds nor performed the remediation which is necessary and desirable both for the current school use and for the planned future residential use. (Exhibit K)

7.4.3.  Allowing an onsite retaining wall to fall into such disrepair as to now be subject to a recently issued Town of Greenwich Order to Repair attached hereto as Exhibit D

demonstrating that the Receiver failed to maintain a retaining wall despite the necessary repair being clearly visible to anyone inspecting the Property (Exhibit L)

## IV.   PLAINTIFF READYCAP'S CUSHMAN & WAKEFIELD APPRAISAL ERRORS

8. **Plaintiff's Agent Cushman & Wakefield**, appears to have grossly understated Defendant's Property current market value in ReadyCap's Cushman & Wakefield Appraisal dated as of January 13, 2022. The Appraiser failed to adhere to its letter of engagement and own definitions, inappropriately dismissing the valuable residential redevelopment approvals previously procured by Defendants, (attached hereto as Exhibit C) in calculating the Property's current market value.

8.1. The Appraiser errs in omitting consideration of development potential in his land sales valuation and attributes land value to land area, i.e. the square footage of the parcel, rather than buildable rights, i.e. the floor area ration (FAR) or volume of the structure that can be built on the land – a fatal flaw and at odds with his own definitions therein. Specifically,

8.1.1.   The Appraiser concluded a Market Valuation improperly omitting any calculation based on the allowable building mass or volume, and instead using the lot size or land area as a factor.

8.1.2.   None of the inferior office properties the Appraiser used as "comparable" have the benefit of favorable GBO zoning (which unlike the others has a superior 0.9 FAR under the Town's 6-110 housing regulations), and the Appraisal thereby failed to adjust for the subject Property's far superior existing development rights.

8.1.3.   Appraiser failed to adhere to its letter of engagement and own definitions, by utilizing, as comparable office properties, sales that in fact were transacted to

developers seeking future residential development approvals, each of which were vastly inferior to the Defendants' in-place property rights and development potential.

V.    **DEFENDANT'S POTENTIAL COUNTER-CLAIMS AGAINST PLAINTIFF AND RECEIVER ARE SUBSTANTIAL AND HAVE MERIT**

9.1.4.    **Lender Liability.** Plaintiff has acted to harm Defendants by imposing long term office leases to unfairly encumber the Property prohibiting residential development. Further, funding $2.2 million of renovations to the buildings on the Property which do not add any discernable additional value to the Property and appear to be structured to create unnecessary fees for the Receiver and additional costs and burden to the Defendants. Plaintiff and Receiver have effectively converted the immediate, valuable residential development rights.

9.1.5.    **Receiver Liability** The Receiver has acted to harm Defendants by

9.1.5.1.    Entering into long term under-market leases that unfairly divest Defendants of significantly more valuable residential development rights;

9.1.5.2.    Failing to adhere to the terms of the Court Order appointing it;

9.1.5.3.    Failing to properly maintain the Property including the elevator, needed environmental remediation, and the structural integrity of a retaining wall, creating undue liability and financial exposure to the Defendants; and

9.1.5.4.    Structuring work so as to increase the fees due to the Receiver

In sum, Receiver is doing $2.9 million of work that is not accretive to the Property's market value, and structuring said work in a way to extract double the Court's approved fees; thereby increasing financial exposure, liability exposure, debt and burden to the Defendants. By imposing

8

long term office leases to unfairly encumber the Property prohibiting residential development this will damage the Defendants for years.

## VI.    CONCLUSION

Plaintiff ReadyCap, the Receiver and its agents, and the Appraiser have submitted documents that appear to me to be materially false and misleading and have implemented a damaging office leasing strategy for a valuable multi-family development site, unfairly burdening Defendants with their self-serving and unduly self-enriching actions that, whether by negligence or malicious design, have severely diminished the value of the Property and significantly impaired Defendants rights, economic viability and ability to repay any (legitimate) debt owed to ReadyCap.

DATED at Greenwich, Connecticut, this 12th day of February 2023.

Brent Carriker

Subscribed and sworn to,
before me, this 12th day of
February 2023.

AP Pascarella, Commissioner of the Superior Court

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AP Pascarella                                                    :
Plaintiff,                                                          :

v.                                                                     : Case No. _____

Ten-Ex Commercial Real Estate, et al.                :

Defendants.                                                   :        June ___, 2023


EXHIBIT _____

**Aldo Pascarella**

| | |
|---|---|
| **From:** | Brent Carrier <brentlcarrier@yahoo.com> |
| **Sent:** | Monday, June 12, 2023 9:40 AM |
| **To:** | Aldo Pascarella |
| **Subject:** | Fwd: Motion to OPen Judgment |
| **Attachments:** | Memo in Support - Open Jdgmt 1.29.23 (1) 2.pages |

Begin forwarded message:

**From:** Brent Carrier <bcarrier@me.com>
**Subject: Re: Motion to OPen Judgment**
**Date:** February 3, 2023 at 2:26:52 PM EST
**To:** Lorraine Pace <lorripace@aol.com>
**Cc:** Aldo Pascarella <aldo@pascarellalaw.com>

CRE Development has since reviewed the Claimed Debt, Receivers Report and Appraisal in conjunction with the filed receiver reports filed with the Court and has found a number of discrepancies that should be addressed in thorough detail:

(a) Affidavit of Debt Inappropriately Calculated

(i) Advances funded by ReadyCap to the Receiver were to be structured as a priority loan to the Receiver (under the terms of the Order), NOT as additional advances under the Defendants loan subjecting Pascarella to potential personal guarantee liability.

1. Further, the $2,000,000 reported as funded by ReadyCap, and subject to collection at default rate interest against Defendants, was in actuality not expended in full, with nearly 50% sitting in the Receivers operating account (though somehow Defendants obligation to repay?)

1

(ii) Tenant Improvement expenditures funded by the tenant Cedar School, in the amount of $710,000 appear to be underreported by ReadyCap and the Receiver as only $500,000.

(b) Cedar School payments not properly reflected

(i)

(c) Receiver Improperly

(i) Pursued below market office leasing at $30psf, ignoring Defendant's hard fought and expensive residential conversion approved by the Town of Greenwich Planning & Zoning $80psf

(ii) Expended $2M on renovations which appear to be conducted to generate fees to Receiver

(iii) Improperly asserted himself into Defendants zoning application process to inhibit Defendants ability to maximize its asset value

(d) Receiver Failed to

(i) Duty of Care

1. Maintain Elevator

2. Remediate Environmental Contamination

3. Maintain Structural Integrity of Wall

On Feb 3, 2023, at 10:29 AM, Lorraine Pace <lorripace@aol.com> wrote:

Attached is the latest version.  I'm hoping to use Brent's affidavit to create the interrogatories.  We really have to get this in today - even if it means removing the interrogators for now and filing them afterward.

Please let me know what you think.

Lorri

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| Ten-Ex Commercial Real Estate, et al. | : |
| Defendants. | :        June __, 2023 |

EXHIBIT _____

DOCKET NO: FST CV 19 6044279     :     SUPERIOR COURT

:     JUDICIAL DISTRICT OF

:

READYCAP COMMERCIAL, LLC     :     STAMFORD-NORWALK

:

:     AT STAMFORD

:

V.                :    :

WH PARCEL I, LLC,     :
HENRY W. PASCARELLA,     :     September 26, 2022
AVERADO PASCARELLA, and     :
R.S. SILVER ENTERPRISES, INC.     :

## AFFIDAVIT OF DEBT

STATE OF KANSAS            )
                         )    ss:
COUNTY OF JOHNSON     )

Personally appeared, Grant Winemiller, who being duly sworn, deposes and says:

1.     I am over the age of 18 years and believe in the obligations of an oath.

2.     I am employed in the position of Asset Manager of the Plaintiff, Readycap Commercial, LLC, I have personal knowledge of the matters set forth herein, and I am authorized and competent to make this affidavit.

3.     I have personal knowledge of the books and records of the Plaintiff utilized to determine the amount of the debt at issue in this action, and I have personally reviewed the account of the Defendants, with respect to this matter. The books and records utilized to determine the amount of the debt are generated in the ordinary course of business of Readycap Commercial,

LLC, and the information contained in said records are recorded within a reasonable time after the transaction reflected in the records.

4.    On October 25, 2016, WH Parcel I, LLC borrowed $6,300,000.00 from Plaintiff and executed a Promissory Note ("Note") in their favor.

5.    Henry W. Pascarella and Averado Pascarella executed and delivered to Plaintiff a Guaranty in which they unconditionally guaranteed prompt payment when due of the aforementioned indebtedness of WH Parcel I, LLC.

6.    Plaintiff is currently the owner and holder of the Note and Guaranty.

7.    WH Parcel I, LLC is in default under the terms of the Note by virtue of its failure to payments when due.

8.    Similarly, Henry W. Pascarella and Averado Pascarella is in default under the terms of the Guaranty by virtue of their failure to make payment when due.

9.    Pursuant to the terms of the Note and Guaranty the following amounts are justly due and owing to the Plaintiff as of September 28, 2022:

| | |
|---|---|
| Principal Balance: | $ 6,083,117.56 |
| Interest: (6.13%) | $ 1,491,580.43 |
| Default Interest (5% over regular interest) | $ 1,204,795.23 |
| Late Fees Prior to Acceleration: | $12,747.50 |
| Servicer Advances | $2,142,642.91 |
| Taxes Advanced: | $235,090.36 |
| Insurance Costs Advanced: | $101,559.73 |

| Tenant Improvements / Leasing | ($455,000.00) |
|---|---|
| Immediate Repair | ($62,100.00) |
| Suspense | (338.00) |

TOTAL:                                    *$10,754,095.72*

Current Interest Rate as of Date of Affidavit: 11.13%


10.    The subject mortgage held by the Plaintiff is not an "eligible mortgage" as defined in Connecticut General Statutes §8-265dd, et. seq. (Emergency Mortgage Assistance Program), because the mortgagor mortgaged the real property at issue for commercial or business purposes and the property securing the mortgage is not owner occupied.


Subscribed and sworn to before
me this day **26th** of September 2022


Notary Public

JUSTIN NOGALSKI
My Appointment Expires
September 27, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AP Pascarella                                          :

Plaintiff,                                            :

v.                                                   : Case No. _____

Ten-Ex Commercial Real Estate, et al.                 :

Defendants.                                          :        June __, 2023

EXHIBIT _____

DOCKET NO: FSTCV196044279S

READYCAP COMMERCIAL, LLC
   V.
WH PARCEL I, LLC Et Al

ORDER    431197

SUPERIOR COURT

JUDICIAL DISTRICT OF STAMFORD
  AT STAMFORD

4/12/2023

## ORDER

ORDER REGARDING:
03/17/2023 201.00 MOTION TO RESET LAW DAYS AFTER FILING OF A BANKRUPTCY
PETITION (CGS 49-15)

The foregoing, having been heard by the Court, is hereby:

ORDER: GRANTED
Disposition: JDGSF - JUDGMENT OF STRICT FORECLOSURE

Notice of Judgment of Strict Foreclosure
Property Address: 200 Pemberwick Road, Greenwich CT 06831
Judgment of Strict Foreclosure is hereby entered as follows:
Debt: $10,754,095.72
Attorney Fees: $13,335.00
Total: $10,767,430.72
Appraisal Fee: $6,800.00
Title Search Fee: $225.00
Fair Market Value: $7,350,000.00
LAW DAY SET FOR Tuesday, June 20, 2023, for the owner of the equity of redemption, and subsequent
days for subsequent encumbrancers in the inverse order of their priorities.

Judicial Notice (JDNO) was sent regarding this order.

431197

Judge: ROBERT LOUIS GENUARIO
Processed by: Varsha Peter

This document may be signed or verified electronically and has the same validity and status as a document with a physical
(pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services
Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the
Connecticut General Statutes and Connecticut Practice Book Section 4-4.

**JDNO NOTICE**

**FST-CV-19-6044279-S    READYCAP COMMERCIAL, LLC v. WH PARCEL I, LLC Et Al**

Notice Issued: **06/16/2023**

**Court Address:**
CLERK, SUPERIOR COURT
JUDICIAL DISTRICT OF STAMFORD-NORWALK
123 HOYT STREET
STAMFORD, CT 06905
**Website:** www.jud.ct.gov

**Notice Content:**
Notice Issued: **06/16/2023**
Docket Number: **FST-CV-19-6044279-S**
Case Caption: **READYCAP COMMERCIAL, LLC v. WH PARCEL I, LLC Et Al**
Notice Sequence #: **1**

JDNO NOTICE

ORDER

ORDER REGARDING:
02/14/2023 194.00 MOTION TO OPEN JUDGMENT AND EXTEND THE LAW DAY
The foregoing, having been heard by the Court, is hereby:

ORDER: DENIED

Motion to Open Judgment and Extend the Law Date is Denied. However, the Court is hereby sua sponte opening and extending the law date.

The court orders that the plaintiff file a response to the motion to dismiss by 07/14/2023 and other party(s) to reply by 07/21/2023. The court will hear motion to dismiss on 07/26/2023 at 2:00 PM (remote hearing).

Notice of Judgment of Strict Foreclosure (as opened and modified)
Property Address: 200 Pemberwick Road, Greenwich CT 06831.
The Court is hereby sua sponte opening and extending the law date.
Judgment of Strict Foreclosure is hereby entered as follows:
Debt: $10,754,095.72
Attorney Fees: $13,335.00
Total: $10,767,430.72
Appraisal Fee: $6,800.00
Title Search Fee: $225.00
Fair Market Value: $7,350,000.00
LAW DAY SET FOR Tuesday, September 12, 2023, for the owner of the equity of redemption, and subsequent days for subsequent encumbrancers in the inverse order of their priorities.

Judicial Notice (JDNO) was sent regarding this order.

Judge: ROBERT LOUIS GENUARIO
Processed by: Varsha Peter

**PASCARELLA LAW FIRM PC (438339)**

## Notice (JDNO) 🖶

Docket No: FST-CV-19-6044279-S
Issue Date: 06/16/2023
Sent By:    Civil/Family
My Tags:

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| Ten-Ex Commercial Real Estate, et al. | : |
| Defendants. | :        June __, 2023 |

EXHIBIT _____

DOCKET NO: FST CV 19 6044279  :  SUPERIOR COURT

            :

            :  JUDICIAL DISTRICT OF

            :

READYCAP COMMERCIAL, LLC  :  STAMFORD-NORWALK

            :

            :  AT STAMFORD

            :

V.           :

         :

WH PARCEL I, LLC,     :

HENRY W. PASCARELLA,   :  March 30, 2022

AVERADO PASCARELLA, and  :

R.S. SILVER ENTERPRISES, INC. :

## AFFIDAVIT OF DEBT

STATE OF KANSAS        )

              )  ss:

COUNTY OF JOHNSON     )

   Personally appeared, Julian Murillo, who being duly sworn, deposes and says:

   1.   I am over the age of 18 years and believe in the obligations of an oath.

   2.   I am employed in the position of Asset Manager of the Plaintiff, Readycap Commercial, LLC, I have personal knowledge of the matters set forth herein, and I am authorized and competent to make this affidavit.

   3.   I have personal knowledge of the books and records of the Plaintiff utilized to determine the amount of the debt at issue in this action, and I have personally reviewed the account of the Defendants, with respect to this matter. The books and records utilized to determine the amount of the debt are generated in the ordinary course of business of Readycap Commercial,

LLC, and the information contained in said records are recorded within a reasonable time after the transaction reflected in the records.

4.    On October 25, 2016, WH Parcel I, LLC borrowed $6,300,000.00 from Plaintiff and executed a Promissory Note ("Note") in their favor.

5.    Henry W. Pascarella and Averado Pascarella executed and delivered to Plaintiff a Guaranty in which they unconditionally guaranteed prompt payment when due of the aforementioned indebtedness of WH Parcel I, LLC.

6.    Plaintiff is currently the owner and holder of the Note and Guaranty.

7.    WH Parcel I, LLC is in default under the terms of the Note by virtue of its failure to payments when due.

8.    Similarly, Henry W. Pascarella and Averado Pascarella is in default under the terms of the Guaranty by virtue of their failure to make payment when due.

9.    Pursuant to the terms of the Note and Guaranty the following amounts are justly due and owing to the Plaintiff as of March 30, 2022:

| | |
|---|---|
| Principal Balance: | $ 6,083,117.56 |
| Interest: (6.13%) | $ 1,305,132.87 |
| Default Interest (5% over regular interest) | $ 1,052,717.29 |
| Late Fees Prior to Acceleration: | $12,747.50 |
| Servicer Advances | $1,059,951.58 |
| Taxes Advanced: | $200,453.78 |
| Insurance Costs Advanced: | $101,559.73 |

Special Servicing Fees (0.75% per annum):          $155,879.89

Liquidation Fee (1.50%):                           $141,816.90

Tenant Improvements / Leasing                      ($455,000.00)

Immediate Repair                                   ($62,100.00)


TOTAL:                                             $ *9,596,277.10*

Current Interest Rate as of Date of Affidavit: 11.13%


10.     The subject mortgage held by the Plaintiff is not an "eligible mortgage" as defined in Connecticut General Statutes §8-265dd, et. seq. (Emergency Mortgage Assistance Program), because the mortgagor mortgaged the real property at issue for commercial or business purposes and the property securing the mortgage is not owner occupied.


Subscribed and sworn to before
me this day 30ᵗʰ of March, 2022

_____
Notary Public

JUSTIN NOGALSKI
My Appointment Expires
September 27, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AP Pascarella                                    :
Plaintiff,                                       :
v.                                               : Case No. _____

Ten-Ex Commercial Real Estate, et al.            :

Defendants.                                      :        June __, 2023



EXHIBIT _____



## IV.    SIGNIFICANT VARIANCES

**CURRENT MONTH**

- **Revenue:** Unfavorable variance of -$9.1k due primarily to D1 Prep paid $7.0k vs. $12.1k billed plus increased rents from Avanti/Grad (-$3.0k) not in place yet due to delays in renovations.
- **Expenses:** Unfavorable variance of -$21.4k due primarily timing of the real estate tax payment offset by favorable R&M (+$14.1k).
- **Capital Expenditures:** Deposit payment for the HVAC project.

**YEAR TO DATE**

- **Revenue:** Unfavorable variance of -$50.3k due primarily to D1 Prep paid $7.0k vs. $12.1k billed (-$40.0k) plus increased rents from Avanti/Grad (-$18.0k) not in place yet due to delays in renovations offset by 2021 utility reimbursements paid by Cedar School.
- **Expenses:** Favorable variance of +$108.0k due primarily to favorable landscaping/parking lot contingencies ($47.8k), unused lease commissions ($60.0k) and unused professional fees ($8.0k) offset by higher utilities than budgeted (-$17.5k).
- **Capital Expenditures:** Payments to vendors for the door and fire stop installs on the 1st floor plus CM fees for all 2021 work completed were paid in February.  New TI work and HVAC projects are both starting.

## V.    OCCUPANCY & LEASING

**Occupancy Status**

Current occupancy is 78.82%.

Leasing strategy is underway. The following leases have been signed, Cedar School, RJBT (Expansion), Cornerstone (Relocation), Avanti/Graduation Solutions 1st amendment to license agreement (Relocation) and Jeffrey Mathews Financial Group (Relocation). After the above leasing strategy is finalized, there will be approximately 500 SF available.

## VI.    SIGNIFICANT DELINQUENCIES & LEGAL

- D1 Prep is in arrears $41k, total includes March, July, and August 2020 balances ($0.7k) along with $40k unpaid from January - August 2022 rent. Expect a conversation between Receiver and tenant to confirm rents to be charged in 2022.
- Cedar School – unpaid August utility charges of $4.1k.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AP Pascarella | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| Ten-Ex Commercial Real Estate, et al. | : |
| Defendants. | :     June __, 2023 |


EXHIBIT _____

cost and expense of the maintenance, repair(s) and/or replacement(s) necessitated by such gross negligence or willful misconduct.

(b)      The costs and expenses incurred for any maintenance, repair and/or replacement to all or any portion of the Easement Area and/or the Easement Area Appurtenances shall be paid within (10) days of written demand (the "**Due Date**") therefore accompanied by reasonable information verifying such costs and expenses incurred for the same.

(c)      If any Parcel Owner shall fail to reimburse any other Parcel Owner as required by this Agreement for any costs and expenses incurred by such Parcel Owner within thirty (30) days after the date any such written demand is given by the Parcel Owner entitled to such reimbursement, such amounts shall bear interest at the rate of five percent (5%) per annum (not to exceed the maximum rate of interest allowed by law) from the Due Date until such amounts are paid in full and the Parcel Owner entitled to such reimbursement shall have all rights and remedies at law and in equity, including, without limitation, to sue for money damages for failure to make such payments as and when required.

4.3      **Property Taxes.** This Agreement shall not affect the responsibility of Parcel II Owner for the payment of real estate taxes and Parcel II Owner shall remain solely responsible for payment of all real estate taxes with respect to Parcel II, including, without limitation, the Easement Area.

### ARTICLE V
### NON-INTERFERENCE

5.1      **No Interference by Improvements to Parcel II.**      Parcel II Owner shall not cause any actions to occur which would interfere with the exclusive use of the Easement Area, as provided for in Section 2.1 of this Agreement, by the Parcel I Owner, its Occupants or Permittees; provided, however, to the extent necessary for the development of Parcel II, the Parcel II Owner shall have the temporary right to utilize the Easement Area that is reasonably necessary for the storage of construction materials and other construction related activities so long as such utilization of the Easement Area does not cause (a) Parcel I to be in violation of any zoning laws, ordinances, rules, regulations, etc.; and/or (b) a default under any lease (including, without limitation, any amendments or side letters entered into between Parcel I Owner and any Parcel I tenant to facilitate the development of Parcel II) on Parcel I.

### ARTICLE VI
### LIMITATION ON LIABILITY

6.1      Each holder of title to Parcel II shall be liable for all obligations of the Grantor hereunder which occur while they hold title to Parcel II and any such party that transfers all of its right, title and interest in and to Parcel II shall have no liability for obligations of the Grantor hereunder which occur from and after the date of such transfer.

6.2      Each holder of title to Parcel I shall be liable for all obligations of the Grantee hereunder which occur while they hold title to Parcel I and any such party that transfers all of its right, title and interest in and to Parcel I shall have no liability for obligations of the Grantee hereunder which occur from and after the date of such transfer.

### ARTICLE VII
### REMEDIES AND ENFORCEMENT

7.1      **All Legal and Equitable Remedies Available.** In the event of a breach or threatened breach by any Parcel Owner of any of the terms, covenants or conditions hereof, including but without limitation any of the obligations set forth in Article IV above, the other Parcel Owner shall be entitled

RECEIVED
JUN  7 2016
PLANNING & ZONING
COMMISSION

6816798v9